UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Helen M. Whitehurst,

Plaintiff,

— against —

Staten Island University Hospital; North Shore Long
Island Jewish Health System, Inc.; George Gresham;
Melissa Hamm; and John Doe,

Defendants.

**18-cv-1090 (ARR) (RER)**

**Opinion & Order**

ROSS, United States District Judge:

Helen Whitehurst is suing, *inter alia*, her former employer, Staten Island University Hospital ("SIUH"), for firing her, and her former union, 1199SEIU United Healthcare Workers East ("1199SEIU"), for failing to challenge that firing. She claims that they violated the New York City Human Rights Law ("NYCHRL") and New York State Human Rights Law ("NYSHRL") by discriminating against her because of her disability—sleep apnea.[1] Whitehurst filed suit in state court, but 1199SEIU removed this action to federal court (with the consent of the other defendants), claiming that "because a determination of Plaintiff's rights is governed solely by federal law, this action is removable to federal court." Notice of Removal ¶ 6, ECF No. 1.

Whitehurst subsequently filed a motion to remand and for attorney's fees associated with litigating this motion, arguing that her complaint raises only state-law claims. 1199SEIU and the

---

[1] For the purposes of resolving this motion, and because it has not been addressed by any of the parties, I will assume that sleep apnea qualifies as a "disability" under the NYCHRL and NYSHRL.

hospital defendants[2] oppose this motion. 1199SEIU and the hospital defendants also both separately sought a pre-motion conference regarding motions to dismiss, which I have held in abeyance pending the disposition of the motion to remand. For the following reasons, I deny plaintiff's motion to remand and lift the stay of the defendants' proposed Rule 12(b)(6) motions.

## BACKGROUND

### A. Factual and procedural background[3]

SIUH hired Whitehurst in 2007 to work as a dispatcher/emergency medical technician. Compl. ¶ 16, ECF No. 1-1. In September 2014, SIUH transferred this work to Long Island, but offered Whitehurst another job in Staten Island as a telecommunications operator. *Id.* ¶ 17. Under the terms of the collective bargaining agreement ("CBA") negotiated by her union, 1199SEIU, Whitehurst was considered a probationary employee for her first 90 days in this new position and thus could be fired "for any reason." *Id.* ¶ 20. On December 10, 2014, Whitehurst briefly nodded off while answering phone calls. *Id.* ¶ 21. Melissa Hamm, Whitehurst's direct supervisor, noticed this and told Whitehurst to take a break. *Id.* ¶ 25. On December 11, 2014, Whitehurst's head again began to nod from sleepiness, and Hamm again noticed. *Id.* ¶ 27. At the end of Whitehurst's shift that day, Hamm told her that she had failed her probation and therefore would be fired. *Id.* ¶ 28.

On January 8, 2015, Whitehurst's present counsel sent a letter to SIUH, with 1199SEIU copied on the letter, informing them that his client's two incidents of sleepiness were caused by a medical condition—sleep apnea. *Id.* ¶¶ 30–31 & Ex. A. Ms. Whitehurst had been diagnosed with severe obstructive sleep apnea syndrome in 2012, which can cause excessive drowsiness "due to

---

[2] By "the hospital defendants" I mean SIUH, Northshore Long Island Jewish Health System, Inc. (now known as Northwell Health, Inc.), and Melissa Hamm.

[3] For the purpose of this section, I assume the truth of the complaint's factual allegations.

lack of normal sleep." *Id.* ¶¶ 22–23 & Ex. B. Whitehurst did not inform her employer of this condition, however, until after she was fired in December 2014. Pl.'s Reply Br. 7–8, ECF No. 17.

In this letter, counsel also argued that Whitehurst's termination violated the terms of the CBA because she was not an at-will employee. Although the CBA provides that "'[a]ny employee who is laterally transferred shall serve the same probationary period on the new job as a new hire,'" it also states that if such an employee is removed from her new position, she will be "returned to the 'former job' if 'vacant,' or to another 'suitable job,' with no loss of seniority." Compl. Ex. A at 2 (quoting the CBA). Because a lateral transfer, unlike a new employee, is protected by the CBA, she can only be fired for cause and subject to the CBA's provisions for the discharge of workers. *Id.* Yet SIUH did not follow these procedures in Whitehurst's case, which, counsel argues, would not permit her firing, especially given that she suffers from sleep apnea. *Id.* at 2–3.

Whitehurst demanded that 1199SEIU file a grievance on her behalf to get her job back, but the union refused to do so. Compl. ¶¶ 32–33. She then filed an unfair labor practice complaint with the National Labor Relations Board ("NLRB"), which threatened to file a formal complaint against 1199SEIU. *Id.* ¶¶ 34–35. Under this threat of enforcement, 1199SEIU filed a grievance, but SIUH denied it, "continu[ing] to claim Plaintiff's status was 'probationary' and thus she could be fired for any reason." *Id.* ¶¶ 36–37. After this denial, 1199SEIU refused to file for arbitration. *Id.* ¶ 41. Whitehurst appealed this decision to the union's Hearings and Appeals Board, which affirmed the decision not to pursue arbitration because "there is virtually no likelihood of succeeding in arbitration." *Id.* ¶¶ 42–43. Whitehurst filed a second complaint with the NLRB on October 4, 2016, alleging that "SEIU engaged in a perfunctory effort with respect to the grievance and it improperly failed to pursue arbitration." *Id.* ¶ 46. During the course of the NLRB's investigation of this complaint, the union produced a document entitled "Discipline and Standards

of Conduct, dated 12/31/13 Revised," which "lists 'Sleeping on Hotel Property' as a 'Category 2' offense punishable by suspension or discharge." *Id.* ¶¶ 47–48. The NLRB then decided not to pursue an unfair labor practice "since unions have discretion not file for arbitration on behalf of a worker." *Id.* ¶ 49. Whitehurst did not appeal this decision because it was "an un-appealable matter of prosecutorial discretion." *Id.* ¶ 49 n.1.

Instead, Whitehurst filed the present complaint in Richmond County Supreme Court on November 30, 2017. Her complaint alleges violations of the NYCHRL and NYSHRL for disability-based discrimination, but does not allege a violation of federal labor laws. *See id.* ¶¶ 58–68. 1199SEIU removed the suit to federal court on February 20, 2018 and filed a letter on ECF in early March requesting a pre-motion conference regarding an anticipated motion to dismiss. *See* Notice of Removal; Letter to Request Pre-Motion Conf., ECF No. 9. 1199SEIU construed Whitehurst's complaint as raising a claim that the union violated its duty of fair representation (DFR), but argued that plaintiff "fails to state a claim of discrimination under the DFR, New York State Human Rights Law or New York City Human Rights Law . . . , because she alleges no facts to provide the grounds for even a minimal inference of discriminatory motivation." Letter to Request Pre-Motion Conf. 2. Additionally, the union argued that the six-month statute of limitations for DFR claims barred Whitehurst's suit. *Id.* at 3. The hospital defendants also requested leave of court to file a Rule 12(b)(6) motion, arguing that their "ignorance of Plaintiff's medical condition when they separated her from employment precludes her discrimination claim." Letter Requesting Leave to File Mot. to Dismiss 2, ECF No. 14. Further, they had no legal duty to later "accommodate a medical condition she had not disclosed to them during her employment, or . . . to rescind the termination determination during the post-termination grievance process."

*Id.* I stayed the briefing of both motions until I resolved plaintiff's motion to remand. *See* Mar. 14, 2018 Order; Mar. 23, 2018 Order.

### B. The motion to remand

Plaintiff's motion to remand relies on the Second Circuit's recent decision in *Figueroa v. Foster*, 864 F.3d 222 (2d Cir. 2017), which she construes as controlling the outcome of this case. *See* Pl.'s Br. in Supp. of Mot. to Remand 4 ("Pl.'s Br."), ECF No. 12-5. In *Figueroa*, the court held that the "duty of fair representation does not *necessarily* preempt the NYSHRL, even when a labor organization is acting in its capacity as a collective bargaining agent." 864 F.3d at 224 (emphasis added). In Whitehurst's view, this means that her complaint does not raise a federal question, given that she pleads only violations of the NYCHRL and NYSHRL. She argues that the question of whether the National Labor Relations Act "pre-empt[s]the New York State and City Human Rights Law" is just "another way" of asking whether her "rights in this case [are] governed solely by federal law."  Pl.'s Br. 1–2. According to her, *Figueroa* answers this question "in the negative." *Id.* at 2. In other words, she reads *Figueroa* as standing for the proposition that "[a]llegations of discrimination in handling, mis-handling, or not handling, a grievance may proceed in a New York State forum under the NYSHRL, independent of federal law." *Id.* And here, on its face, plaintiff's complaint "presents one count of discrimination under the NYSHRL and NYCHRL . . . and no federal claims." *Id.* at. 3 (citation omitted). Thus, she argues, it follows that there is no preemption and "no federal question in this case." *Id.*

1199SEIU agrees with plaintiff "that '[t]here is no evidence that the NLRA's duty of fair representation was designed or intended to preempt state laws focused on combatting invidious discrimination, such as the NYSHRL.'" Def. 1199SEIU's Mem. of Law in Opp'n to Pl.'s Mot. to Remand 3 ("1199SEIU Br."), ECF No. 16 (alteration in original) (quoting *Figueroa*, 864 F.3d at

233). Nonetheless, "1199SEIU views [her] claim as predicated only on federal law." *Id.* This is because Whitehurst "does not plead facts that even remotely involve the type of invidious discrimination that the NYSHRL and NYCHRL guard against." *Id.* at 4. Indeed, "[o]ther than labeling the single claim a 'discrimination' claim . . . , Plaintiff does not plead a single fact . . . that would reasonably support a cause of action for invidious discrimination." *Id.* Instead, "the allegations Whitehurst styled as a discrimination claim against the Union are actually a DFR claim that requires interpretation of the parties' CBA under Section 301 of the Labor Management Relations Act ('LMRA'), 29 U.S.C. § 185, and the grievance and arbitration clause which Plaintiff wanted the Union to invoke." *Id.* at 5. Such claims are governed solely by federal law and therefore raise a federal question. *Id.* at 6–8 (citing, *inter alia, Vaca v. Sipes*, 386 U.S. 171 (1967)).

Similarly, the hospital defendants argue that Whitehurst's claims "are preempted by Section 301 of the Labor-Management Relations Act . . . , because the Court will need to interpret the parties' collective bargaining agreement in order to adjudicate her claims. As a result, Plaintiff's allegations present a federal question conferring subject matter [jurisdiction] upon this Court." Defs. Staten Island Univ. Hosp. et al.'s Mem. of Law in Opp'n to Pl.'s Mot. to Remand 3–4 ("SIUH Br."), ECF No. 15. While "a union-represented employee may bring claims of employment discrimination without preemption under Section 301 . . . , the allegations presented here make[] interpretation and application of various provisions of the parties' collective bargaining agreement unavoidable." *Id.* at 4. Specifically, plaintiff's "allegations of discriminatory treatment do not concern the Hospital Defendants' conduct leading up to her termination from employment, but only their decisions after her termination from employment, when her rights and entitlements were entirely defined by the grievance process in the parties' collective bargaining agreement." *Id.* at 5. Thus, resolving Whitehurst's claims "requires a determination of the

employer's contractual obligations and her entitlements under the [CBA]." *Id.* at 6. And because her "claim for relief is inextricably bound [up] with interpretation of the parties' collective bargaining agreement," it is preempted by federal law under § 301. *Id.* at 6–7 (collecting cases).

## DISCUSSION

Defendants may remove state-court actions to federal court if the plaintiff could have originally filed suit in federal court, based on either diversity or federal-question jurisdiction. 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392. "Thus, a plaintiff may avoid federal jurisdiction by pleading only state law claims, even where federal claims are also available, and even if there is a federal defense." *Fax Telecomunicaciones Inc. v. AT & T*, 138 F.3d 479, 486 (2d Cir. 1998). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (alteration in original) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

There is an exception, however, to the general rule that the plaintiff is "master of the claim." *Caterpillar Inc.*, 482 U.S. at 392. Under the artful-pleading doctrine, "a plaintiff cannot avoid removal by artful pleading, *i.e.*, by framing in terms of state law a complaint the 'real nature of [which] is federal, regardless of plaintiff's characterization' . . . , or 'by omitting to plead necessary federal questions in a complaint." *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27–28 (2d Cir. 1988) (citations omitted); *see also Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475–76 (1998).

"The artful-pleading doctrine includes within it the doctrine of complete preemption." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). Thus, if a plaintiff "raises . . . a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Id.* Section 301 of the LMRA is one of only a handful of statutes that the Supreme Court has found "to have the requisite extraordinary preemptive force to support complete preemption." *Id.*

Federal courts have the same supplemental jurisdiction in "cases removed to federal court as [they do in] cases initially filed there; a removed case is necessarily one 'of which the district courts . . . have original jurisdiction.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (ellipsis in original) (quoting 28 U.S.C. § 1441(a)). Thus, if a case is properly removed on the basis of a federal question, a district court can exercise "supplemental jurisdiction over the accompanying state law claims so long as those claims constitute 'other claims that . . . form part of the same case or controversy.'" *Id.* (ellipsis in original) (quoting 28 U.S.C. § 1367(a)).

Here, I find that both Whitehurst's claims against 1199SEIU and her claims against the hospital defendants arise under federal law for substantially the reasons that the defendants advance. Moreover, these claims form "part of the same case or controversy," 28 U.S.C. § 1367(a), as they "derive from a common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Both sets of claims stem from Whitehurst's termination and failure to get her job back during the grievance process. Accordingly, as long as there is federal-question jurisdiction over one set of claims, there is supplemental jurisdiction over the other and I can hear both. *See Int'l Coll. of Surgeons*, 522 U.S. at 165.

**I. Plaintiff's complaint is properly construed as raising a duty of fair representation claim against 1199SEIU, not a disability-based discrimination claim.**

As noted previously, 1199SEIU argues that, although Whitehurst explicitly states that she is raising only state-law antidiscrimination claims, the factual allegations of her complaint "can only be construed as raising a claim for breach of the duty of fair representation." 1199SEIU Br. 1–2. And such a claim necessarily arises under federal law. *Id.* at 6–8. Whitehurst replies that this argument is foreclosed by *Figueroa*, which allows plaintiffs to bring independent claims for discrimination by unions under the NYSHRL (and by extension the NYCHRL), without being preempted by federal law. Pl.'s Reply Br. 1–4. The union has the better of the argument.

The Supreme Court delineated the scope of the duty of fair representation in *Vaca v. Sipes*. As the exclusive bargaining representative for employees, a union has an implied statutory duty under the National Labor Relations Act to fairly represent its members "both in its collective bargaining . . . and in its enforcement of the resulting collective bargaining agreement." 386 U.S. at 177 (citations omitted). Unions have "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* (citation omitted).

While the central question in *Vaca* was whether courts can exercise jurisdiction over DFR claims, or instead only the NLRB could adjudicate such claims, the Court also implicitly held that federal law preempts state law in this context. *See id.* at 188–89 (holding that the Supreme Court of Missouri mistakenly applied state rather than federal law); *Figueroa*, 864 F.3d at 230. The Court later explained that when an employer breaches a collective bargaining agreement and the union does not adequately challenge this action, "an employee may bring suit against both the employer and the union." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). "Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since

the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation." *Id.* But "the two claims are inextricably interdependent." *Id.* And, under preemption principles, such "a hybrid § 301/fair representation claim," *id.* at 165, arises under federal law.

Nonetheless, the Second Circuit clarified last year in *Figueroa* that the "duty of fair representation does not necessarily preempt" state antidiscrimination laws such as the NYSHRL. 864 F.3d at 224. Applying conflict preemption principles, rather than field preemption, *Figueroa* found that "the NYSHRL serves the same purpose of prohibiting discrimination as does the NLRA's duty of fair representation." *Id.* at 235. Accordingly, the duty of fair representation does not "preempt[] the NYSHRL *in its entirety* when applied to unions acting in their capacity as collective bargaining agents." *Id.* Instead, the NYSHRL (and by extension the NYCHRL) "provide[s] union members with additional protections against invidious discrimination by their labor organizations." *Id.* at 224. The court of appeals, however, did "not purport to address every potential conflict between the NYSHRL and federal law." *Id.* at 235.

Plaintiff attempts to wield *Figueroa* as a shield against federal jurisdiction. She argues that because *Figueroa* establishes that the duty of fair representation does not necessarily preempt state antidiscrimination laws—and her complaint purports to allege only violations of such state antidiscrimination laws—there is no federal question here. Pl.'s Br. 1–4; Reply Br. 1–4. This is far too broad a reading. Certainly, *Figueroa* establishes that individuals can sue their unions under state antidiscrimination law in addition to—or instead of—for a breach of the duty of fair representation in some cases. But *Figueroa* also acknowledges that the duty of fair representation may preempt the NYSHRL under certain circumstances. *See* 864 F.3d at 235 ("We hold only that the NYSHRL presents no potential conflict so incompatible with federal labor laws that *all* of its

provisions must fall." (emphasis added)). And, more to the point, *Figueroa* does not address the question of when a complaint can be said to raise claims under the NYCHRL or NYSHRL in addition to or instead of federal law. As 1199SEIU aptly notes, the questions of whether the duty of fair representation generally preempts state antidiscrimination law and whether plaintiff's rights in *this case* are governed solely by federal law are separate inquiries that, under the circumstances of this case, have different answers. 1199SEIU Br. 3.

To make out a claim under either the NYCHRL or the NYCHRL, Whitehurst must show that the defendants discriminated against her "because of" a qualifying disability. N.Y. Exec. Law § 296(1)(a), (c); N.Y. Admin. Code § 807(1)(a), (c); *Spiegel v. Schulmann*, 604 F.3d 72, 80, 82 (2d Cir. 2010). Thus, the factual allegations of her complaint must provide at least "plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).[4]

Here, however, even viewed in the light most favorable to the plaintiff, the factual allegations of the complaint do not support the notion that 1199SEIU discriminated against Ms. Whitehurst *because of* her disability. Plaintiff argues that "SEIU engaged in disability discrimination . . . by failing to take the matter to arbitration notwithstanding its full

---

[4] While *Littlejohn* extended *Iqbal* to the context of Title VII, not the NYSHRL or NYCHRL, the general pleading requirement that "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)), applies equally to NYCHRL and NYSHRL claims. I note in this regard that the Second Circuit "has determined that a plaintiff's discrimination claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII." *Spiegel*, 604 F.3d at 80. The Second Circuit did subsequently state that, due to the requirement that the NYCHRL be given the broadest possible construction, "it is unclear whether *McDonnell Douglas* continues to apply to NYCHRL claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109–10 & n. 8 (2d Cir. 2013). Nonetheless, it is clear that, under the NYCHRL, "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Id.* at 110. And, under *Iqbal*, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678.

understanding that Plaintiff was disabled." Pl.'s Reply Br. at 1. But that the union was aware of Whitehurst's sleep apnea does not entail that it acted—or failed to act—on that basis. On the contrary, the factual allegations of the complaint provide no reason to believe that 1199SEIU's decision not to pursue arbitration was motivated in any way by her disability.

To be sure, the complaint does state in the section describing the cause of action that "SEIU engaged in discrimination by failing to pursue a course of action, that being arbitration, which left Plaintiff without a remedy to reverse a clear instance of discrimination." Compl. ¶ 60. Yet the subsequent paragraphs indicate that Whitehurst is in fact alleging that 1199SEIU acted in bad faith or in an arbitrary fashion: "SEIU initially also relied on a *bad faith* interpretation of the CBA which allowed the Hospital to terminate plaintiff as 'probationary.' SEIU later relied on a document which purports to allow the Hospital to terminate workers who sleep at work, but SEIU failed to acknowledge the sleeping was brought about by illness." *Id.* ¶ 64–65 (emphasis added). This perhaps supports a plausible claim of a breach of the duty of fair representation. *See Vaca*, 386 U.S. at 190 ("A breach of the statutory duty of fair representation occurs . . . when a union's conduct . . . is arbitrary, discriminatory, or in bad faith."). But it does not allege a claim that the union engaged in discriminatory treatment because of plaintiff's disability.

In sum, although Whitehurst claims that she is raising only claims of disability-based discrimination under the NYCHRL and the NYSHRL, there are no factual allegations in her complaint that provide even minimal support for the proposition that 1199SEIU discriminated against her because of her sleep apnea, as both statutes require. Instead, if the complaint states a plausible claim for relief against 1199SEIU at all, it states a claim for breach of the duty of fair representation. And, no matter how it is labeled, such a claim arises under federal law. *See, e.g.,*

*Derrico*, 844 F.2d at 27–28. I therefore find that, under the artful-pleading doctrine, plaintiff's complaint raises a federal question and 1199SEIU properly removed it to federal court.

## II. Plaintiff's claims against the hospital defendants are preempted under § 301 because they are substantially dependent upon analysis of the terms of the CBA.

Whitehurst's claims against her former employer also raise a federal question because they are "substantially dependent" on the interpretation of the CBA and thus "must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citation omitted). If plaintiff was in fact a probationary employee who could be fired at will at the time of her termination, she can have no claim of disability-based discrimination as to her firing because SIUH did not know of her disability at that time.[5] Indeed, she admits that her initial termination in December 2014 is not "actionable employment discrimination" for this reason. Pl.'s Reply Br. at 8. She claims only disability-based discrimination by SIUH during the subsequent grievance process, *id.*, a process governed by the terms of the CBA. And if the CBA did not afford her the right to be discharged only for cause, she can have no claim of disability-based discrimination (or violation of the CBA under § 301).

The Supreme Court has stated that § 301 offers "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp.*, 471 U.S. at 209. "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law . . . ." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983) (quoting 29 U.S.C. § 185).

---

[5] Disability discrimination claims under the NYSHRL and NYCHRL require, respectively, that an employer have "notice" of the disability, *Magnotti v. Crossroads Healthcare Mgmt.*, 126 F. Supp. 3d 301, 314 (E.D.N.Y. 2015) (NYSHRL), and that the "the disability is known or should have been known by the [employer]." *Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 885 (2013) (NYCHRL).

Indeed, the preemptive force of this statute "is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)). Nonetheless, "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* (citing *Franchise Tax Bd.*, 463 U.S. at 12).

Instead, "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Id.* at 394 (citations omitted); *see also Allis-Chalmers Corp.*, 471 U.S. at 220 ("We . . . hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contact, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law."). Thus, in *Allis-Chalmers*, § 301 preempted the plaintiff's state-law tort claim because "evaluation of the tort claim [was] inextricably intertwined with consideration of the terms of the labor contract." 471 U.S. at 213. "Because the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." *Id.* at 218. This requires preemption because "Congress has mandated that federal law govern the meaning given [labor] contract terms." *Id.* at 218–19.

On the other hand, "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement" without having their claims preempted. *Caterpillar Inc.*, 482 U.S. at 396. A claim is independent for purposes of § 301 preemption analysis when "resolution of the state-law claim does not require construing the collective-bargaining

agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). "[E]ven if dispute resolution pursuant to a collective-bargaining agreement . . . and state law . . . would require addressing the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409–10. Similarly, "the mere fact that a broad contractual protection against discriminatory . . . discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the [collective bargaining agreement]." *Id.* at 412–13. Moreover, "when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994) (citing *Lingle*, 486 U.S. at 413 n.12); *see also id.* at 124 ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").

As the Second Circuit has cautioned, "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001) (*per curiam*); *accord Foy v. Pratt & Whitney Grp.,* 127 F.3d 229, 233 (2d Cir. 1999) ("The principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied."). A brief examination of two Second Circuit cases dealing with this issue is sufficient to illustrate the point.

In *Foy v. Pratt & Whitney Group*, the Second Circuit held "that plaintiffs' state law negligent misrepresentation claims are not preempted by [§ 301] because they rest on independent state law rights that do not require interpretation of the CBA." 127 F.3d at 232. The court noted that, "[u]nlike *Allis-Chalmers*, this case does not involve a tort premised on the violation of duties in the

CBA." *Id.* at 235. To the contrary, the "plaintiffs' state law misrepresentation claims depend upon the employer's behavior, motivation, and statements, as well as plaintiffs' conduct, their understanding of the alleged offer made to them, and their reliance on it." *Id.* Thus, "[r]eference to the CBA may be needed, but state law will play no part in determining what the parties agreed to in the CBA or whether the CBA has been breached. . . . State law—not the CBA—is the source of the rights asserted by the plaintiffs . . . ." *Id.* (internal citations omitted).

In *Vera v. Saks & Company*, on the other hand, the Second Circuit held that a claim that a term of a collective bargaining agreement violated state labor law was preempted by § 301. 335 F.3d 109, 116 (2d Cir. 2003). The plaintiff, a salesperson at Saks Fifth Avenue, filed a putative class action claiming that a CBA provision violated section 193 of the New York Labor Law and the common law. *Id.* at 112. (This provision provided that Saks would deduct money from the paychecks of its salespersons on a prorated basis whenever someone returned shoes and the original salesperson—who had received a commission—could not be identified. *Id.*) The plaintiffs did not raise any federal claims on the face of the well-pleaded complaint, and they asserted that "section 193 "creates state rights that are independent of the CBA, that is, that he can establish defendant's liability under section 193 without any analysis of the terms of the CBA." *Id.* at 115. Nevertheless, the Court of Appeals found "that this case requires interpretation of the CBA. For example, we must interpret the CBA to determine whether it embodies an agreement between the parties to alter the common law rule regarding when commissions are earned." *Id.* Further, "plaintiff's challenge to the lawfulness of a term of the CBA will require substantial interpretation of the CBA. . . . In sum, because resolution of plaintiff's . . . claim will require substantial analysis of the CBA, we conclude that section 301 preempts plaintiff's section 193 claim." *Id.* at 116.

Here, too, although Whitehurst alleges only that SIUH violated state antidiscrimination laws, adjudicating her claims will require substantial interpretation of the terms of the CBA. As plaintiff concedes that her employer did not know that she suffered from sleep apnea at the time of her December 2014 termination, she does not—and cannot—claim that this action constitutes discrimination. Pl.'s Reply Br. 8; *see also* n.5, *supra*. Instead, the crux of her complaint is that SIUH "refused to recognize Plaintiff's disability and adhered to its decision to terminate Plaintiff's employment throughout the grievance process even though Plaintiff, and her attorney, presented documentation explaining a disability which led to Plaintiff's brief periods of somnolence." Compl. ¶ 62. She also asserts as a cause of action that the hospital "refused to apply any form of progressive discipline, even though such action was called for, and instead applied the maximum penalty of termination to a minor instance of medically induced somnolence." *Id.* ¶ 63.

For these allegations to constitute possible grounds for relief requires that plaintiff had some rights to assert in the grievance process governed by the CBA. This is because she needs to show that the hospital took some discriminatory action *after* being told of her sleep apnea. Once plaintiff's counsel informed SIUH that this medical condition was what caused her to fall asleep on the job, continuing to adhere to its decision to discharge her during the grievance process may have been actionable discrimination. *See McMillan v. City of New York*, 711 F.3d 120, 129 (2d Cir. 2013) ("Here, it is undisputed that McMillan was tardy because of his disability and that he was disciplined because of his tardiness. In other words, McMillan was disciplined because of his disability."); *Beaton v. Metro. Transp. Auth.*, 15 Civ. 8056 (ER), 2016 WL 3387301, at *7 (S.D.N.Y. June 15, 2016) (collecting cases). But if Whitehurst was merely a probationary employee, then SIUH cannot have discriminated against her during the grievance process because she had no right to avail herself of this process—or to be fired only for cause—in the first place. Thus, to

answer the question of whether the hospital discriminated against Whitehurst, we must first interpret the terms of the CBA to determine what rights she had in the grievance process.

In other words, plaintiff's "allegations of discriminatory treatment" concern only the hospital's "decisions after her termination from employment, when her rights and entitlements were entirely defined by the grievance process in the parties' collective bargaining agreement." SIUH Br. 5; *see also* Pl.'s Reply Br. 8. To adjudicate her claim, I must determine "whether she was properly classified as a probationary employee . . . , whether she was entitled to be terminated from employment only for cause . . . , whether sleeping on the job was an offense that warranted . . . progressive discipline . . . , and whether she was entitled to reinstatement to an alternate position." SIUH Br. at 6. Yet there is at least some dispute between the parties as to exactly what Whitehurst's rights and entitlements were under the CBA. *Compare* Compl. ¶ 29 (alleging that, if plaintiff was terminated from her new position, "the CBA required the hospital to return her to the 'former job' if 'vacant,['] or another 'suitable job' with no loss of seniority"), *with id.* ¶ 37 (alleging that SIUH denied plaintiff's grievance on the ground that she was a probationary employee "and thus she could be fired for any reason"). Therefore, although she seeks to sue SIUH only for violations of state antidiscrimination law, not for a breach of the CBA itself, determining whether she has a right to relief will still require substantial analysis of the terms of the CBA. *See Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332–33 (S.D.N.Y. 2012) (finding that state-law claim was preempted by § 301 because resolving the plaintiff's claim depended on the proper interpretation of the CBA's provisions and "the plain language of the CBA does not indicate a clear answer"); *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 597–98 (E.D.N.Y. 2007) (same); *Salamea v. Macy's East, Inc.*, 426 F. Supp. 2d 149, 154–55 (S.D.N.Y. 2006) (same).

Plaintiff argues in response that she "does not base her claim upon whether or not she was 'probationary'" and that her "alleged probationary status is merely SIUH's position and a likely point of defense." Pl.'s Reply Br. at 10. Largely relying on two First Department decisions, Whitehurst argues that "the defendants' reliance on the CBA in this regard is not enough to 'inject a federal question into an action that asserts what is plainly a state-law claim.'" *Id.* at 8–9 (quoting *Tamburino v. Madison Square Garden, LP*, 115 A.D.3d 217, 222 (N.Y. App. Div. 2014)); *see also id.* at 6, 8 (citing *Suarez v. Gallo Wine Distributors, LLC*, 32 A.D.3d 737 (N.Y. App. Div. 2006)). Plaintiff further claims that although the complaint "references the CBA, and explains what occurred in the grievance/arbitration procedure, this is simply factual background, and the case is grounded solely on discrimination under the NYSHRL. No contract interpretation is needed." *Id.* at 6

Plaintiff is correct that the face of her well-pleaded complaint alleges only violations of state antidiscrimination law and that the mere fact that an employer's defenses involve the CBA would not be sufficient to "invoke federal jurisdiction." *Id.* at 8. But, as discussed above, "the hospital's assertion of Plaintiff's 'probationary status' is not simply "part of SIUH's defense." *Id.* Instead, the question of whether Whitehurst can claim any right to relief turns on her rights under the CBA. Certainly, had SIUH been aware of Whitehurst's disability before it fired her, she would be able to claim discrimination under the NYSHRL and NYCHRL without her claim being preempted by § 301. But, in this case, since the hospital defendants only learned of her sleep apnea after firing her, she can raise a discrimination claim only if she had some rights to assert in the grievance process—and to answer that question we must interpret the terms of the CBA.[6]

---

[6] The Appellate Division cases that Whitehurst relies upon in her reply brief do not support a different conclusion. On the contrary, *Tamburino* and *Suarez* are neither binding nor persuasive. In *Tamburino*, the First Department rejected a claim of § 301 preemption because the plaintiffs were not claiming that their employer violated the CBA, but rather that their employer "withheld portions of the collected gratuities in violation of [New York] Labor Law." 115 A.D.3d at 222. Since the plaintiffs

# CONCLUSION

For the foregoing reasons, the plaintiff's motion to remand is denied and the stay of the defendants' motions to dismiss is lifted. I will issue a separate order setting forth a briefing schedule for the Rule 12(b)(6) motions.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:        June 6, 2018
              Brooklyn, New York

---

were alleging that the defendants' actions violated state law, it was of no import whether they happened to be following the CBA in doing so. "[P]laintiffs may prevail on their claims *regardless* of whether MSG distributed the gratuities to its employees in the manner provided by the CBA." *Id.* (emphasis added). In other words, the state-law claim was not preempted because "resolution of the state-law claim [did] not require construing the collective-bargaining agreement." *Lingle*, 486 U.S. at 407. But, here, the resolution of Whitehurst's state-law claim depends on the interpretation of the CBA. Thus, *Tamburino* is inapposite. *Suarez*, on the other hand, is not so much distinguishable as of little help. Although the Appellate Division held in *Suarez* that plaintiffs' claims were not preempted by § 301 because they "seek relief exclusively under State and City Human Rights Law," 32 A.D.3d at 738, they did so without providing meaningful analysis or the underlying facts. Based on the First Department's conclusory opinion, I simply cannot determine whether this case is "remarkably similar" to *Suarez*, as plaintiff claims. Pl.'s Reply Br. 6. Certainly, just like *Suarez*, this is a case where the plaintiff claims to be seeking relief under only the NYSHRL and NYCHRL. But the similarity may end there. Absent a reason to think that the two cases are on all fours, *Suarez* has no persuasive power.